FILED

2010 Aug-27  PM 04:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA NORTHERN DIVISION

| | |
|---|---|
| COLONY INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THYCON CONSTRUCTION, )<br>A DIVISION OF THYCON, INC. )<br>)<br>Defendant. ) | No.: |

### COMPLAINT FOR DECLARATORY JUDGMENT

Colony Insurance Company ("Colony") files this Complaint for Declaratory Judgment against Thycon Construction, a division of Thycon, Inc. ("Thycon"). Colony respectfully alleges and avers upon information and belief as follows:

### PRELIMINARY STATEMENT

1.      This is an action for declaratory judgment pursuant to 28 U.S.C. §2201 and Rule 57, *Federal Rules of Civil Procedure*, to determine an actual case or controversy between Colony and Thycon regarding the parties' rights and obligations with respect to Commercial General Liability Policy No. GL 660806 issued by Colony to Thycon for the period August 19, 2003 to August 19, 2004 (the "Policy").

2.      Colony seeks a judgment declaring that it has no duty to pay any insurance proceeds under the Policy in connection with the incident described below.

## PARTIES

3.      Colony is a corporation organized and existing under the laws of the State of Virginia with its principal place of business located at 201 N. Union Street, Suite 140, Alexandria, Virginia 22314.

4.      Thycon is a corporation organized and existing under the laws of the State of Alabama located at 3607-B Whitesburg Drive, Huntsville, Alabama 35802.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §1332 because there is diversity of citizenship among the parties, and the matter in controversy exceeds the sum of $75,000, exclusive of interest, attorneys' fees and costs.

6.      Venue is proper in the United States District Court for the Northern District, Northern Division of Alabama because the Policy was issued and delivered in this District and Division.

## GENERAL ALLEGATIONS

7.      Exhibits A through E referenced herein are attached and fully incorporated into this Complaint.

8.      Colony issued Commercial General Liability Policy No. GL 660806 to Thycon for the period August 19, 2003 to August 19, 2004.[1]

9.      Caddell Construction Co., Inc. ("Caddell") contracted with the U.S. Army to construct a bowling center at its Redstone Arsenal Facility in Huntsville, Alabama (the "Redstone Project").

---

[1] A copy of the Policy is attached as Exhibit A.

10. On February 9, 2004, Caddell entered into a Subcontract with Thycon wherein Caddell subcontracted certain work on the Redstone Project to Thycon. The subcontracted work included structural excavation and cast-in-place concrete and metal building systems erection.[2]

11. Article 7 of the Subcontract provides, in part, that Thycon shall "indemnify and hold harmless ... [Caddell] from all damages for bodily injury, sickness, disease, or death.... This indemnification shall extend to claims resulting from performance of this Subcontract and shall apply only to the extent that the claim or loss is caused in whole or in part by any negligent act or omission of [Thycon] or any of its agents, employees, or subcontractors...."[3]

12. On July 28, 2004, James Bryant, an employee of Thycon, was injured while operating a scissor lift at the Redstone Project job site.

13. On February 13, 2006, Bryant filed suit against Thycon and Caddell in the Circuit Court of Madison County, Alabama (the "Underlying Action").[4]

14. Bryant asserts a claim against Thycon for workers' compensation benefits.

15. Bryant asserts claims against Caddell for negligently and/or wantonly failing to: (a) maintain a safe job site and/or work environment; (b) warn of danger; (c) supervise and/or manage said activities and/or personnel on site; and (d) maintain the equipment involved in the accident.

16. Thycon tendered the Underlying Action to Colony.

17. On February 17, 2006, Colony advised Thycon that the Policy did not provide any coverage for the claims asserted against it based on an Employer's Liability Exclusion, which

___

[2] The Subcontract between Caddell and Thycon is attached as Exhibit B.

[3] See Exhibit B, Article 7.

[4] Bryant's Complaint is attached as Exhibit C.

negates coverage, in part, for bodily injury to a Thycon employee.[5] Thus, Colony advised Thycon that it would neither defend nor indemnify it in connection with the Underlying Action. Thycon has not disputed Colony's coverage position.

18.     Caddell subsequently tendered the Underlying Action to Thycon based on the indemnity provision found in Article 7 of the Subcontract. Thycon tendered Caddell's demand to Colony.

19.     On September 1, 2006, Colony advised Caddell that it could not commit to providing indemnification to Caddell, but that Colony would provide Caddell with a defense subject to a complete reservation of rights under the Policy. Colony advised Caddell that it was not an additional insured under the Policy.[6]

20.     Colony has provided Caddell with a defense in the Underlying Action since accepting Caddell's tender in 2006.

21.     The only dispute in this case is whether the Policy provides coverage for any defense and/or indemnity obligations owed by Thycon to Caddell under the Subcontract.

## THE POLICY

22.     Thycon is the named insured on the Declarations Page of the Policy. Caddell is not listed as an insured in the Policy, nor does it qualify for additional insured status. In other words, Caddell has no direct defense and/or indemnity rights under the Policy.

23.     Section I, Coverage A of the Commercial General Liability Coverage Form requires Colony to "pay those sums that [Thycon] becomes legally obligated to pay as damages

---

[5] The February 17, 2006 coverage letter from Colony to Thycon is attached as Exhibit D.

[6] The September 1, 2006 letter from Colony to Caddell is attached as Exhibit E.

because of 'bodily injury' … to which this insurance applies…." The Policy applies to "bodily injury" only if it is caused by an "occurrence" and takes place during the policy period.[7]

24.    The Policy contains a Contractual Liability Exclusion in Section I, Paragraph 2.b. that negates coverage for "'[b]odily injury' … for which [Thycon] is obligated to pay as damages by reason of the assumption of liability in a contract or agreement." However there is an exception to the Contractual Liability Exclusion for liability for damages "[a]ssumed in a contract or agreement that is an 'insured contract,' provided the 'bodily injury' … occurs subsequent to the execution of the contract or agreement…."[8]

25.    The term "insured contract" is defined in the Policy at Section V., Paragraph 9.f., in part, as "[t]hat part of any other contract or agreement pertaining to [Thycon's] business … under which [Thycon] assume[s] the tort liability of another party to pay for 'bodily injury' … to a third person or organization…."[9]

26.    Article 7 of the Subcontract, which outlines Thycon's obligations to Caddell, qualifies as an "insured contract" as defined by the Policy. However, coverage for any obligations allegedly owed by Thycon to Caddell is negated by the Contractors Coverage Limitations and Audit Endorsement (the "Endorsement").

27.    The Endorsement replaces the Employer's Liability Exclusion found at Section I, Paragraph 2.e. of the Commercial General Liability Coverage Form with the following Employer's Liability Exclusion:

---

[7] *See* Exhibit A, Section I, Paragraphs 1.a. and b. of the Commercial General Liability Coverage Form.

[8] *See* Exhibit A, Section I, Paragraph 2.b. of the Commercial General Liability Coverage Form.

[9] *See* Exhibit A, Section V, Paragraph 9.f. of the Commercial General Liability Coverage Form.

This insurance does not apply to:

e.       Employer's Liability

'Bodily injury' to:

(1)      An 'employee' or 'temporary worker' of any insured arising out of and in the course of:

(a)      Employment by any insured; or

(b)      Performing duties related to the conduct of any insured's business....

This exclusion applies:

(1)      Whether an insured may be liable as an employer or in any other capacity;

(2)      To any obligation to share damages with or repay someone else who must pay damages because of the injury; or

(3)      To any liability assumed under any contract or agreement.[10]

The Employer's Liability Exclusion in the Endorsement applies because Bryant was an employee of Thycon who sustained bodily injury in the course and scope of his employment with Thycon.

28.      Coverage for any liability assumed by Thycon in the Subcontract with Caddell is negated by Section e.3. of the revised Employer's Liability Exclusion found in the Endorsement. Thus, Colony owes no obligations (defense or indemnity) to Thycon and/or Caddell in connection with the Underlying Action.

## DECLARATORY RELIEF

29.      The allegations of Paragraphs 1-28 are incorporated by reference herein.

---

[10] Emphasis added.

30.     An actual, present and existing controversy has arisen between Colony and Thycon with respect to Colony's obligations, if any, to Thycon based on Caddell's tender of the Underlying Action to Thycon.

31.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201-2202, Colony seeks a judicial declaration of its rights and duties to Thycon, if any, under the Policy with respect to the demand made against Thycon by Caddell. Specifically, Colony seeks a declaration that the Policy does not provide defense or indemnity coverage for any liability assumed by Thycon in its Subcontract with Caddell. Colony also reserves the right to seek a declaration that it is entitled to reimbursement from Thycon for any defense costs incurred in defending Caddell in the Underlying Action.

32.     In addition to the exclusions addressed herein, Colony pleads all other conditions, terms, warranties, limits, definitions and exclusions of the Policy that also may be found to be applicable to this matter. Colony reserves the right to amend its Complaint for Declaratory Judgment as additional and/or more specific information becomes available.

**WHEREFORE**, for the foregoing reasons, Colony respectfully requests that this Court enter a judgment declaring the rights, status and obligations of the parties under the Policy, including a declaration that the Policy does not afford coverage for any obligations owed by Thycon to Caddell in connection with the Underlying Action.

Dated this 25th day of August, 2010.

/s/ Jennifer W. Wall
Stephen E. Whitehead (WHI066)
Jennifer W. Wall (WAL209)
***Attorneys for Colony Insurance Company***

**OF COUNSEL:**

LLOYD, GRAY, WHITEHEAD, & MONROE, P.C.
2501 20th Place South
Suite 300
Birmingham, Alabama 35223
(205) 967-8822
(205) 967-2380 (Fax)

# EXHIBIT A

# COMMON POLICY DECLARATIONS

[X] COLONY INSURANCE COMPANY
[ ] COLONY SPECIALTY INSURANCE COMPANY
[ ] COLONY NATIONAL INSURANCE COMPANY
9201 FOREST HILL AVENUE, SUITE 200
RICHMOND, VA  23235

**POLICY NUMBER**
GL 660806
RENEWAL OF
GL660474-01
PDQ CODE
91F

**1. NAMED INSURED and MAILING ADDRESS:**
THYCON CONSTRUCTION
A DIVISION OF THYCON, INC.
PO BOX 2131
HUNTSVILLE                          AL   35804  2131

**PRODUCER:** 10001
Overstreet & Newell, Inc.
4480 North Shallowford Rd., #222
Atlanta,                          GA 30338

**2. POLICY PERIOD:** From 08/19/2003 __ to 08/19/2004 __ 12:01 A.M. Standard Time at your Mailing Address above.
IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**3. THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| COVERAGE PARTS | PREMIUM |
|---|---|
| Commercial General Liability | $ 5,568.00 |
| Commercial Property | $NOT COVERED |
| Commercial Crime | $ |
| Commercial Inland Marine | $ |
| Commercial Farm and Ranch | $ |
| Coverage for Certified Acts of Terrorism Rejected; Exclusion Attached. (Per Policyholder Disclosure TRIA2002Notice-1202 attached.) | $NOT COVERED |
| **TOTAL** | $ 5,568.00 |
| TAX | $ 343.08 |
| FEE | $ 150.00 |
| | $ |
| | $ |
| | $ |

RECEIVED OCT - 8 2003

.....H IS REGISTERED AND
... AS A SURPLUS LINE
.....NDER THE ALABAMA
... LINE INSURANCE LAW.

Premium shown is payable at inception.        Total Policy Premium: $  6,061.08

**4. FORMS APPLICABLE TO ALL COVERAGE PARTS:**
See Schedule of Forms and Endorsements - U001 (07/02)

**5. BUSINESS DESCRIPTION:** GENERAL CONTRACTOR

Countersigned: 09/29/2003
                Date

By: _Terry L Newell_
Authorized Representative

U6550 (07/02)

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1984

Company

THYCON CONSTRUCTION
Insured: A DIVISION OF THYCON, INC.



Policy Number: GL 660806

# SCHEDULE OF FORMS AND ENDORSEMENTS

Forms and Endorsements applying to and made part of this policy at the time of issuance:

| NUMBER | TITLE |
|---|---|
| FORMS APPLICABLE - POLICY COMMON FORMS | |
| PJCG  (04-03) | COMMON POLICY JACKET |
| DCJ6550 (07-02) | COMMON POLICY DECLARATIONS |
| U001  (07-02) | SCHEDULE OF FORMS AND ENDORSEMENTS |
| U002  (07-02) | MINIMUM POLICY PREMIUM |
| U094  (07-02) | SERVICE OF SUIT |
| U173  (07-02) | CANCELLATION |
| UCG2175A (11-02) | WR/CERT ACTS TRRRISM & OTHER ACTS EXCL |
| IL0017 (11-98) | COMMON POLICY CONDITIONS |
| IL0021 (04-98) | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT |
| FORMS APPLICABLE - COMMERCIAL GENERAL LIABILITY | |
| DCJ6553 (07-02) | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| U003  (07-02) | HAZARDOUS MATERIALS EXCLUSION |
| U004  (07-02) | MISCELLANEOUS EXCLUSIONS ENDORSEMENT |
| U008CP (07-02) | CONTRACTORS COVERAGE LIMITATIONS AND AUDIT |
| U048  (07-02) | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| U070  (07-02) | DEDUCTIBLE LIABILITY INSURANCE |
| U089  (07-02) | SUBSIDENCE EXCLUSION |
| U122A (07-02) | EXCLUSION - DESIGNATED WORK - ALL RESIDENTIAL CONSTRUCTI |
| U159  (07-02) | LIMITATION OF COVERAGE TO BUSINESS DESCRIPTION |
| CG0001 (10-01) | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG2167 (04-02) | EXCLUSION - FUNGI OR BACTERIA |

Important notice:  See the actual policy forms attached for the full title, terms and conditions.

Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SERVICE OF SUIT

Service of process may be made upon the Company to:

Claims Manager
  Colony Insurance Company,
  Colony National Insurance Company, or
  Colony Specialty Insurance Company
8720 Stony Point Parkway, Suite 300
Richmond, Virginia 23235

Where required by statute, regulation or other regulatory directive, the Company appoints the Commissioner of Insurance, or other designee specified for that purpose, as its attorney for acceptance of service of all legal process in the state in any action or proceeding arising out of this insurance.

The Commissioner or other designee is requested to forward process to the Company as shown above, or if required in his/her particular state, to a designated resident agent for service of process.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U094-0702                                                        Page 1 of 1

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

INTERLINE
IL 00 21 04 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

 Copyright, Insurance Services Office, Inc., 1997

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   (a) Any "nuclear reactor";

   (b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

   (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

     Copyright, Insurance Services Office, Inc., 1997     IL 00 21 04 98   ☐

# COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

This Coverage Part consists of this Declarations Form, the Common Policy Conditions, the Commercial General Liability Form and the Endorsements indicated as applicable. (See "COMMON POLICY DECLARATIONS" for Items 1 and 2)

POLICY NO. __GL 660806__

NAMED INSURED  THYCON CONSTRUCTION
A DIVISION OF THYCON, INC.

## 3. LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products - Completed Operations) | $ 2,000,000 | |
| Products Completed Operations Aggregate Limit | $ 2,000,000 | |
| Personal & Advertising Injury Limit | $ 1,000,000 | |
| Each Occurrence Limit | $ 1,000,000 | |
| Damage To Premises Rented To You Limit | $    50,000 | Any One Premises |
| Medical Expense Limit | $     5,000 | Any One Person |

RETROACTIVE DATE  (CG 00 02 only) - Coverage A of this insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown below.

Retroactive Date: _____ (Enter Date or "None" if no Retroactive Date applies.)

Location of All Premises You Own, Rent or Occupy (Same as Item 1 unless shown below):
4725 WHTESBURG DRIVE S #202                                       HUNTSVILLE                  AL   35802

| CLASSIFICATION | CODE NO. | | PREMIUM BASIS | | RATE | ADVANCE PREMIUM PR / CO | ALL OTHER |
|---|---|---|---|---|---|---|---|
| CONTRACTORS-SUB CONTRACTED WORK | 334 | 91585 | C | 318,000 | 1.26 | | $401 |
| | 336 | 91585 | C | 318,000 | 11.189 | 3558 | |
| CONTRACTORS SUPERVISOR | 334 | 91580 | P | 13,300 | 120.977 | | $1,609 |
| | 336 | 91580 | P | 13,300 | INCL | INCL | |

| 4. FORMS / ENDORSEMENTS APPLICABLE: SEE SCHEDULE OF FORMS AND ENDORSEMENTS - FORM U001 (07/02) | TOTAL PREMIUM FOR THIS COVERAGE PART | $  5,568.00 |
|---|---|---|

5. FORM OF BUSINESS: ☐ Individual  ☐ Joint Venture  ☐ Partnership  ☐ Organization (Other than Partnership or Joint Venture)  ☒ Corporation

Audit Period:  Annual unless otherwise stated:

DCJ6553 (07-02)          Includes Copyright material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1984
Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# HAZARDOUS MATERIALS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, f. and SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions, n. and m.** are replaced by the following:

This insurance does not apply to:

**Hazardous Materials**

(1) "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "hazardous materials" at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "hazardous materials"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "hazardous materials".

(3) Any obligations to share damages with or indemnify another party whom must pay damages because of injury or damage relating to "hazardous materials".

(4) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with paragraphs **(1), (2),** or **(3)** above.

This exclusion applies whether or not such "hazardous material(s)" has any function in your business, operations, premises, site or location.

B. **SECTION V – DEFINITIONS** is amended and the following added:

"Hazardous materials" means "pollutants", lead, asbestos, silica and materials containing them.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTORS COVERAGE LIMITATIONS AND AUDIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A. SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2.
Exclusions, e. is deleted and replaced as follows:**

This insurance does not apply to:

   **e. Employer's Liability**

   "Bodily injury" to:

   **(1)** An "employee" or "temporary worker" of any insured arising out of and in the course of:

       **(a)** Employment by any insured; or

       **(b)** Performing duties related to the conduct of any insured's business; or

   **(2)** A fellow "employee" or "temporary worker" of any insured arising out of and in the course of such employment when the insured is an "executive officer" of such employer; or

   **(3)** The spouse, child, parent, brother or sister of that "employee" or "temporary worker" as a consequence of Paragraph **(1)** above.

   This exclusion applies:

   **(1)** Whether an insured may be liable as an employer or in any other capacity;

   **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury; or

   **(3)** To any liability assumed under any contract or agreement.

**B. SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 5. Premium Audit, subparagraph c.
is deleted and replaced with the following:**

   **c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request. In addition:

   **(1)** You shall provide us upon our request copies of Certificates of Insurance that you shall require and have obtained from your subcontractors before any work is performed on your behalf. You shall maintain copies of these Certificates during and for up to 5 years after the term of such work.

   **(2)** The Certificate must evidence coverage and Limits of Insurance equal to or greater than the coverages and Limits of Insurance provided by this policy in force for the term of the work performed for you, unless other terms and limits are shown below:

   Limits of Insurance:

   Coverage equal to the coverages provided by this policy, and

| | |
|---|---|
| General Aggregate Limit (other than Products/Completed Operations) | $2,000,000 |
| Products/Completed Operations Aggregate Limit | $2,000,000 |
| Each Occurrence Limit | $2,000,000 |

U008CP-0702          Includes copyrighted material of ISO Properties, Inc.,          Page 1 of 2
with its permission.
Company

      **(3)** We will have the right to adjust the annual premium charged you and use the "total cost" of all work you subcontract as the basis for the additional premium for any subcontractor:

            **(a)** whose Certificate of Insurance shows Limits of Insurance or coverage less than that required by us or

            **(b)** for whom you do not have a Certificate.

      **(4)** Any premium charged shall be paid to us by the first Named Insured within 30 days of the date of invoice.

**C.** **SECTION V – DEFINITIONS** is amended and the following added:

"Total cost" means the combined cost of:

    **a.** all labor; plus

    **b.** materials and equipment furnished, used or delivered for use in the execution of the work performed; and

    **c.** overhead and profit including fees and commissions.

**D.** **SECTION V – DEFINITIONS**, subparagraph **19.** is deleted and replaced with the following:

    **19.** "Temporary worker" means any person who is:

       **a.** furnished to you to substitute for a permanent "employee";

       **b.** a short-term worker; or

       **c.** not a "employee" or "volunteer worker".

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.  SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions and SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions are amended and the following added:**

This insurance does not apply to:

"Bodily injury" or "personal and advertising injury" to:

    **(1)**  A person arising out of any:

        **(a)** Refusal to employ that person;

        **(b)** Termination of that person's employment; or

        **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, assault, battery, discrimination or abuse including sexual abuse directed at any person; or

    **(2)**  The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

    **(1)**  Whether the insured may be liable as an employer or in any other capacity; and

    **(2)**  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Includes copyrighted material of ISO Properties, Inc.,
with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Amount and Basis of Deductible | | |
|---|---|---|---|
| | PER CLAIM | or | PER OCCURRENCE |
| Bodily Injury Liability | $N/A | | $N/A |
| OR | | | |
| Property Damage Liability | $N/A | | $N/A |
| OR | | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | | $N/A |

**A.** Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

**B.** You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

    **1. PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

        **a.** Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

        **b.** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage";

        **c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

            **(1)** "Bodily injury";

            **(2)** "Property damage"; or

            **(3)** "Bodily injury" and "property damage" combined; or

        **d.** Under Supplementary Payments-Coverage A and B, to all amounts we pay in the defense and investigation of any claim or "suit" to which this insurance applies

    as the result of any one "occurrence".

    If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

    With respect to "property damage", person includes an organization.

    **2. PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

**a.** Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

**b.** Under Property Damage Liability Coverage, to all damages because of "property damage";

**c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

**(1)** "Bodily injury";

**(2)** "Property damage"; or

**(3)** "Bodily injury" and "property damage" combined; or

**d.** Under Supplementary Payments-Coverage A and B, to all amounts we pay in the defense and investigation of any claim or "suit" to which this insurance applies

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

**C.** The terms of this insurance, including those with respect to:

**1.** Our right and duty to defend the insured against any "suits" seeking those damages; and

**2.** Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

**D.** We, at our sole election and option, may either:

**1.** Pay any part of or all of the deductible amount to effect settlement of any claim or suit, and upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us; or

**2.** Simultaneously upon receipt of notice of any claim or at any time thereafter, request you pay or deposit with us all or any part of the deductible amount, to be held and applied by us as herein provided.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SUBSIDENCE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended and the following added:

This insurance does not apply to "bodily injury" or "property damage" caused by, resulting from, attributable or contributed to, or aggravated by "subsidence".

B. **SECTION V – DEFINITIONS** is amended and the following added:

"Subsidence" means ground movement caused by soil conditions including but not limited to:

    **a.** soil erosion, freezing or thawing,

    **b.** improperly compacted soil or construction defects,

    **c.** roots of trees or shrubs,

    **d.** collapse of storm or sewer drains, or

    **e.** natural occurring shrink or swell soil.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED WORK – ALL RESIDENTIAL CONSTRUCTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended and the following added:

**Residential Construction Work**

This insurance does not apply to "bodily injury" or "property damage" included in the "products - completed operations hazard" and arising out of or resulting from "your work" performed on single or multiple family housing, residential track housing, apartments, townhouses and condominiums.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U122A-0702                                                                                             Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE
# TO
# BUSINESS DESCRIPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

BUSINESS DESCRIPTION:

A  **SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement, b.** is amended and the following added:

   **(4)** The "bodily injury" or "property damage" is caused by or results from the business described in the Schedule.

B.  **SECTION I - COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 1. Insuring Agreement, b.** is amended and the following added:

   This insurance applies to "personal and advertising injury" caused by an offense in the course of the business described in the Schedule.

   **ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

U159-0702                                                                 Page 1 of 1

COMMERCIAL GENERAL LIABILITY
CG 00 01 10 01

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

 **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

  **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

  **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

 No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

 **b.** This insurance applies to "bodily injury" and "property damage" only if:

  **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

  **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

  **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

 **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

 **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

  **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

  **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

  **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

 © ISO Properties, Inc., 2000 **CG 00 01 10 01** ☐

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

 © ISO Properties, Inc., 2000

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance ; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

 © ISO Properties, Inc., 2000

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while taking part in athletics.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

**h. War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

© ISO Properties, Inc., 2000

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

© ISO Properties, Inc., 2000

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      **(1)** "Bodily injury" or "personal and advertising injury":

         **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

      **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

      **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

      **(d)** Arising out of his or her providing or failing to provide professional health care services.

      **(2)** "Property damage" to property:

         **(a)** Owned, occupied or used by,

         **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   **b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   **c.** Any person or organization having proper temporary custody of your property if you die, but only:

      **(1)** With respect to liability arising out of the maintenance or use of that property; and

      **(2)** Until your legal representative has been appointed.

   **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   **a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

   **b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C;**

   b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B.**

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A;** and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

 © ISO Properties, Inc., 2000 ☐

**b.** If a claim is made or "suit" is brought against any insured, you must:

  **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

  **(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

  **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

  **(2)** Authorize us to obtain records and other information;

  **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

  **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

  **(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

    **(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

    **(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

    **(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

    **(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

  **(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

                    © ISO Properties, Inc., 2000                    CG 00 01 10 01    □

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

   c. All other parts of the world if the injury or damage arises out of:

     **(1)** Goods or products made or sold by you in the territory described in **a.** above;

     **(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

     **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

     **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

     **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

       **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

       **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

     **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

      However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      (1) Equipment designed primarily for:

         (a) Snow removal;

         (b) Road maintenance, but not construction or resurfacing; or

         (c) Street cleaning;

      (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

 © ISO Properties, Inc., 2000   ☐

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)** Products that are still in your physical possession; or

        **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            **(a)** When all of the work called for in your contract has been completed.

            **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    **b.** Does not include "bodily injury" or "property damage" arising out of:

        **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

        **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

        **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

    **a.** Means:

        **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)** You;

            **(b)** Others trading under your name; or

            **(c)** A person or organization whose business or assets you have acquired; and

        **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

  **a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

    **(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2000

COMMERCIAL GENERAL LIABILITY
CG 21 67 04 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.,** Exclusions of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**B.** The following exclusion is added to Paragraph **2.,** Exclusions of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc.,  2001

# EXHIBIT B

Tim Connor
256-532-3800 phone
256-532-3899 fax
thycon1@knology.net



JOB NO.: __90021- 4 -SC__                                    ACCOUNT CODE: ___030000___

DATE: _____2/9/04_____

## SUBCONTRACT
### (SHORT FORM)

This agreement is made this __9__ day of __February, 19 2004__ and effective the __9__ day of

February __19 2004__ by and between __Caddell Construction Co., Inc.__ (Contractor) and

__Thycon, Inc.__ (Subcontractor) to perform the Work identified in Article 2
in accordance with the Project's Contract Documents.

PROJECT:          Expansion & Renovation of Bowling Center, Redstone Arsenal, A

OWNER:            U.S. Army Community and Family Support Center

ARCHITECT:        Cromwell Architects Engineers, Inc.

CONTRACTOR:       Caddell Construction Co., Inc.

SUBCONTRACTOR:    Thycon, Inc., PO Box 2131, Huntsville, AL 35804
                  shipping: 4725 Whitesburg Dr., Huntsville, AL 35802

### ARTICLE 1

CONTRACT PAYMENT. The Contractor agrees to pay Subcontractor for satisfactory performance of Subcontractor's Work

the sum of __Three Hundred Seventy Nine Thousand Five Hundred Twenty Three__ Dollars (S __379,523.00__)

Progress payments, less retainage of _____See Rider Item 3.A__ %, shall be made to Subcontractor for Work satisfactorily performed
no later than seven (7) days after receipt by Contractor of payment from Owner for Subcontractor's Work. Final payment
of the balance due shall be made to Subcontractor no later than seven (7) days after receipt by Contractor of final pay
ment from Owner for Subcontractor's Work. These payments are subject to receipt of such lien waivers, affidavits, war
ranties and guarantees required by the Contract Documents or Contractor.

### ARTICLE 2

SCOPE OF WORK. Subcontractor agrees to commence Subcontractor's Work herein described upon notification by Con
tractor, and to perform and complete such Work in accordance with Contract Documents and under the general direc
tion of Contractor in accord with Contractor's schedule. This shall include all work necessary or incidental to complete the

__Structural Excavation, Cast-In-Place Concrete and Metal Building Systems Erection__

Work for the Project as more particularly, though not exclusively specified in __See Rider Item 1__

### ARTICLE 3

SCHEDULE OF WORK. Time is of the essence. Subcontractor shall provide Contractor with any requested scheduling
information of Subcontractor's Work. The Schedule of Work, including that of this Subcontract shall be prepared by Con
tractor and may be revised as the Work progresses.

Subcontractor recognizes that changes may be made in the Schedule of Work and agrees to comply with such change
without additional compensation.

Subcontractor shall coordinate its work with all other contractors, subcontractors, and suppliers on the Project so as nc
to delay or damage their performance, work, or the Project.

## ARTICLE 4

**CHANGES.** Contractor, without nullifying this Agreement, may direct Subcontractor in writing to make changes to Subcontractor's Work. Adjustment, if any, in the contract price or contract time resulting from such changes shall be set forth in a Subcontract Change Order pursuant to the Contract Documents.

## ARTICLE 5

**FAILURE OF PERFORMANCE.** Should Subcontractor fail to satisfy contractual deficiencies within three (3) working days from receipt of Contractor's written notice, then the Contractor, without prejudice to any right or remedies, shall have the right to take whatever steps it deems necessary to correct said deficiencies and charge the cost thereof to Subcontractor, who shall be liable for payment of same, including reasonable overhead, profit and attorneys fees.

## ARTICLE 6

**INSURANCE.** Prior to the start of Subcontractor's Work, Subcontractor shall procure and maintain in force for the duration of the Work, Worker's Compensation Insurance, Employer's Liability Insurance, Comprehensive General Liability Insurance and all insurance required of Contractor under the Contract Documents. Contractor, Owner and Architect shall be named as additional insureds on each of these policies, except for Worker's Compensation.

## ARTICLE 7

**INDEMNIFICATION.** To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless Owner, Architect, Architect's consultants, and Contractor from all damages, losses, or expenses, including attorneys fees, from any claims or damages for bodily injury, sickness, disease, or death, or from claims for damage to tangible property, other than the Work itself. This indemnification shall extend to claims resulting from performance of this Subcontract and shall apply only to the extent that the claim or loss is caused in whole or in part by any negligent act or omission of Subcontractor or any of its agents, employees, or subcontractors. This indemnity shall be effective regardless of whether the claim or loss is caused in some part by a party to be indemnified. The obligation of Subcontractor under this Article shall not extend to claims or losses that are primarily caused by the Architect, or Architect's consultant's performance or failure to perform professional responsibilities.

## ARTICLE 8

**WARRANTY.** Subcontractor warrants its work against all deficiencies and defects in materials and/or workmanship and agrees to satisfy same without cost to Owner or Contractor for a period of one (1) year from the date of Substantial Completion of the Project or per Contract Documents, whichever is longer.

## ARTICLE 9

**SPECIAL PROVISIONS.** (Insert any special provisions required by this Subcontract).

The attached Rider shall become a part of this Subcontract.

In witness whereof, the parties have executed this Agreement under Seal, the day and year first written above.

THYCON, INC.

SUBCONTRACTOR (FIRM NAME)

BY (Type or print signer's name and title)
Timothy D. Connor, PRESIDENT

Subcontractor's Federal Tax ID Number: 63-0959358

CADDELL CONSTRUCTION CO., INC.

CONTRACTOR (FIRM NAME)

BY (Type or print signer's name and title)
Vice President of Building Operations

© Copyright 1987 Associated General Contractors of America (AGC No. 603)

# EXHIBIT C

# IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA

**JAMES BRYANT**

    Plaintiff

v.

CIVIL ACTION NO.: CV06-_134 JPS_

**THYCON CONSTRUCTION CO.**,
a corporation or other business entity;
**CADDELL CONSTRUCTION CO.**, a
corporation or other business entity;
1-5, those persons, firms, or corporations
who or which employed Plaintiff at the
time of the accident made the subject of
this suit; 6-10, those persons, firms, or
corporations, who or which possessed
and/or held any supervisory, management,
safety, and/or general contracting roles
on the jobsite where Plaintiff's injury
occurred; 11-15, those persons, firms, or
corporations, who or which is/are
responsible to Plaintiff for the provision
of Workers' Compensation benefits under
the law; 16-20, those persons, firms, or
corporations, who or which is liable to
Plaintiff for the injuries he sustained
due to any negligent and/or wanton
conduct; 21-25, those persons, firms, or
corporations, who or which had any role
and/or responsibility in the work being
performed on the jobsite where Plaintiff
was injured at the time of his accident
and injury; 26-30, those persons, firms,
or corporations, who or which owned,
maintained, leased, operated, used, and/or
moved, any of the equipment involved in
the accident made the subject of this suit;
31-35, those persons, firms, or corporations,
who or which is/are the master, servant, employee,
employer, owner, manager, principal, agent,
successor, predecessor, insurer, alter ego, subsidiary,
parent, lessor, and/or lessee, of any named

and/or fictitious Defendant herein.

Defendants.

## COMPLAINT

1.      The plaintiff is an adult resident citizen of the state of Tennessee.

2.      The Defendant, Thycon Construction, Co., is a corporation or other business entity doing business at all times material hereto in Madison County, Alabama.

3.      The Defendant Caddell Construction Company is a corporation or other business entity doing business at all times material hereto in Madison County, Alabama.

4.      Fictitious Defendants 1-35 are persons, firms, or corporations who are otherwise unknown to the plaintiff, or if their identities are known to Plaintiff, their role as proper party Defendants is unknown. These Defendants shall be added by amendment when their identities and roles as proper party defendants are ascertained.

5.      Any reference in this complaint to defendants or any defendant, named or fictitious, refers to all defendants, both named and fictitious.

6.      The defendants, both named and fictitious, are liable for the actions, inactions, and/or other conduct of their employees and/or agents which contributed to the injuries and damages described herein.

2

## COUNT I

### Claim for Workers' Compensation Benefits

7.      The plaintiff is a resident of Tennessee.

8.      The defendant, Thycon Construction Co., is a corporation doing business in Madison County, Alabama.

9.      The relationship of "employer-employee" has prevailed between the plaintiff and the defendant at all times relevant to the issues in this case.

10.     On July 28, 2004, the plaintiff suffered an injury which arose out of and in the course of his employment.    Specifically, Plaintiff suffered severe injuries throughout his body as a whole when the lift in which he was working fell.

11.     The defendant had adequate and proper notice of the plaintiff's accident and injuries as required by law.

WHEREFORE, PREMISES CONSIDERED, the plaintiff demands the following relief pursuant to the Alabama Workers' Compensation Act:

(a)     Workers' compensation benefits;

(b)     Medical benefits;

(c)     That plaintiff's attorney fees be computed in a lump sum and paid on the front end of plaintiff's award; and

(d)     Such other relief to which the plaintiff is entitled based on the pleadings and proof presented in the trial of this case.

## COUNT II

### Negligence

12.     Plaintiff realleges and readopts all the preceding allegations and averments.

3

02-13-2006    10:37AM    FROM-All Risks, Ltd                    770 351 9051              T-028   P.007/022   F-390

13.    On or about July 28, 2004, the Defendant Caddell Construction Company, and/or fictitious Defendants, acted negligently proximately resulting in Plaintiff's injuries.  The Defendants negligently failed to maintain a safe jobsite and/or work environment, negligently failed to warn of danger, negligently failed to supervise and/or manage said activities and/or personnel on site, and/or negligently failed to maintain the equipment involved in Plaintiff's accident.

14.    As a proximate consequence of the defendant's, both named and fictitious, said negligence, the plaintiff, suffered severe physical injuries, as detailed above.  The plaintiff has suffered injuries throughout his body, permanent physical impairment, severe mental anguish, emotional distress, pain and suffering, and economic losses.

WHEREFORE, PREMISES CONSIDERED, the plaintiff demands judgment against the defendants, both named and fictitious, for compensatory damages, in an amount to be determined by struck jury, plus costs, interest, and any other relief to which he is entitled.

## COUNT III

### Wantonness

15.    Plaintiff realleges and readopts all the preceding allegations and averments.

16.    On or about July 28, 2004, the Defendant Caddell Construction Company, and/or fictitious Defendants, acted wantonly proximately resulting in Plaintiff's injuries.  The Defendants wantonly failed to maintain a safe jobsite and/or work environment, wantonly failed to warn of danger, wantonly failed to

4

supervise and/or manage said activities and/or personnel on site, and/or wantonly failed to maintain the equipment involved in Plaintiff's accident.

17.    As a proximate consequence of the defendant's, both named and fictitious, said wantonness, the plaintiff, suffered severe physical injuries, as detailed above. The plaintiff has suffered injuries throughout his body, permanent physical impairment, severe mental anguish, emotional distress, pain and suffering, and economic losses.

WHEREFORE, PREMISES CONSIDERED, the plaintiff demands judgment against the defendants, both named and fictitious, for compensatory damages and punitive damages, in an amount to be determined by struck jury, plus costs, interest, and any other relief to which he is entitled.

Jeffrey G. Blackwell
Attorney for Plaintiff

Of Counsel:
Hornsby, Watson, Hornsby
    & Blackwell
1110 Gleneagles Drive
Huntsville, Alabama 35801

PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON COUNTS TWO
AND THREE

OF COUNSEL

5

# EXHIBIT D



February 17, 2006

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**

MR TIM CONNOR
THYCON CONSTRUCTION
PO BOX 2131
HUNTSVILLE AL 35804

RE:   Claim Number:        127991 KSG
      Our Insured:         Thycon Construction
      Claimant:            James Bryant



Dear Mr. Connor:

Colony Insurance Company acknowledges receipt of this claim wherein your employee
fell from a scissor lift while at a job site.

Thycon Construction is insured with Colony Insurance Company under policy number
GL 3201789 with effective dates 8-19-05/06, through the HRH of AL Insurance Agency of
Huntsville, AL. Losses are subject to the terms and conditions of forms: CG0001, ed
07/98 - the Commercial General Liability Coverage Form. Thycon carries $1,000,000.00
per occurrence limits for property damage coverage subject to $2 million aggregate with
no bodily injury or property damage deductible. Your policy states:

"**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

"**SECTION I - COVERAGES**

"**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE
LIABILITY**

"1.   **Insuring Agreement**

      a.    We will pay those sums that the insured becomes legally obligated
            to pay as damages because of 'bodily injury' or 'property damage'
            to which this insurance applies. We will have the right and duty to
            defend any 'suit' seeking those damages. However, we will have no
            duty to defend the insured against any 'suit' seeking damages for
            'bodily injury' or 'property damage' to which this insurance does
            not apply. We may at our discretion investigate any 'occurrence'
            and settle any claim or 'suit' that may result. But:

            "(1)  The amount we will pay for damages is limited as described
                  in Limits of insurance (SECTION III); and



THYCON CONSTRUCTION
Claim No.: 127991
February 17, 2006
Page 2

"(2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

"No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

"b.    This insurance applies to 'bodily injury' and 'property damage' only if:

"(1)    The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and

"(2)    The 'bodily injury' or property damage' occurs during the policy period.

"c.    Damages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury'.

Your policy also contains the following exclusions:

"2.    **Exclusions**

"This insurance does not apply to:

\* \* \*

"e.    **Employer's Liability**

" 'Bodily injury' to:

"(1)    An employee of the insured arising out of and in the course of:

"(a)    Employment by the insured; or

"(b)    Performing duties related to the conduct of the insured's business;

"(2)    The spouse, child, parent, brother or sister of that 'employee' as a consequence of paragraph (1) above.

"This exclusions applies:

THYCON CONSTRUCTION
Claim No.: 127991
February 17, 2006
Page 3

"**(1)**   Whether the insured may be liable as an employer or in any other capacity; and

"**(2)**   To any obligation to share damages with or repay someone else who must pay damages because of the injury."

"This exclusion does not apply to liability assumed by the insured under an 'insured contract'.

"**Coverage C. Medial Payments**

"**1.**   **Insuring agreement**

"**a.**   We will pay medical expenses as described below for'bodily injury' caused by an accident:

"**(1)**   On premises you own or rent;

"**(2)**   On ways next to premises you own or rent' or

"**(3)**   Because of your operations;
provided that:

"**(1)**   The accident takes place in the **coverage territory** and during the policy period;

"**(2)**   The expenses are incurred and reported to us within one year of the date of the accident; and

"**(3)**   The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonable require.

"**b.**   We will make these payments regardless of fault.  These payments will not exceed the applicable limit of insurance.  We will pay reasonable expenses for:

"**(1)**   First aid at the time of an accident;

"**(2)**   Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

"**(3)**   Necessary ambulance, hospital, professional nursing and funeral services."



THYCON CONSTRUCTION
Claim No.: 127991
February 17, 2006
Page 4

**"2.    Exclusions**

"We will not pay expenses for 'bodily injury':

**"a.**    To any insured.

**"b.**    To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**"c.**    To a person injured on that part of premises you own or rent that the person normally occupies.

**"d.**    To a person, whether or not an employee of any insured, if benefits for the 'bodily injury' are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**"SECTION V- DEFINITIONS**

\* \* \*

**"5.**    'Employee' includes a 'leased worker.' 'Employee' does not include a 'temporary worker.'

\* \* \*

**"13.**    'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

\* \* \*

This claim is related to injuries sustained by an employee while in the course and scope of his employment with you. Based upon the reasons stated above, we are denying coverage for the subject claim at this time. This means we will not be providing a defense or indemnification to Thycon Construction. However, if you disagree with our position and/or can provide additional information that may have a bearing on this issue, please inform us immediately and we will reconsider our position. Please consider this to be a qualified denial letter.

This will advise you that no action heretofore or hereafter taken by us on your behalf shall constitute an admission of liability or an admission of coverage under the policy, nor is it a waiver of any right to disclaim coverage under the policy. We also state that by referring to the above, the company does not waive any of the other policy provisions or its right to assert further coverage defenses that may arise. It is my understanding that you did refer this to your worker's compensation carrier and they are handling this.

In addition, I did receive a copy of the contract between Caddell and Thycon, however I did not receive the tender demand letter that you referenced. Please fax a copy of that to my attention at (303) 773-7373 so I can review their demand.



THYCON CONSTRUCTION
Claim No.: 127991
February 17, 2006
Page 5

Should you have any questions regarding coverage issues or anything in this letter which you disagree, please either write or call me at 1-800-456-8458, Ext. 7346.

Sincerely,

COLONY INSURANCE COMPANY


Karl Goeken
Sr. Claims Examiner, Ext. 7346

KSG/kms/ksg227

cc:    MR TIM CONNOR          (Regular Mail)
        THYCON CONSTRUCTION
        PO BOX 2131
        HUNTSVILLE AL  35804



7160 3901 9849 1294 6360

TO: MR TIM CONNOR
THYCON CONSTRUCTION
PO BOX 2131
HUNTSVILLE AL 35804

SENDER:

REFERENCE: 127991 KSG

PS Form 3800, January 2005

RETURN RECEIPT SERVICE

| | | |
|---|---|---|
| Postage | | 0.00 |
| Certified Fee | | 0.00 |
| Return Receipt Fee | | 0.00 |
| Restricted Delivery | | |
| Total Postage & Fees | | 0.00 |

US Postal Service
**Receipt for Certified Mail**
No Insurance Coverage Provided
Do Not Use for International Mail

DENVER, CO GMF FINANCIAL STA
POSTMARK OR DATE
FEB 17 2006
80225



| 2. Article Number | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

7160 3901 9849 1294 6360

A. Received by (Please Print Clearly)    B. Date of Delivery
Timothy B. Connor

C. Signature
X _____    ☐ Agent    ☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type   CERTIFIED MAIL

4. Restricted Delivery? (Extra Fee)   ☐ Yes

1. Article Addressed to:

MR TIM CONNOR
THYCON CONSTRUCTION
PO BOX 2131
HUNTSVILLE AL 35804

Reference Information

127991 KSG

HUNTSVILLE, AL 35801 DOWNTOWN STA
FEB 21 2006

PS Form 3811, January 2005        Domestic Return Receipt

# EXHIBIT E



Colony
MEMBER ARGONAUT GROUP

September 1, 2006

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**

MR MONTE MCKINNEY
SENIOR VICE PRESIDENT OPERATIONS
CADDELL CONSTRUCTION CO INC
PO BOX 210099
MONTGOMERY AL 36121



Certified Article Number

7140 3901 9849 4714 5127

SENDERS RECORD

RE:    Claim Number:        129431KSG
       Our Insured:         Thycon Construction
       Claimant:            James Bryant
       Date of Loss:        7-28-04

Dear Mr. McKinney:

We received a copy of your January 31, 2006 defense and indemnification tender notice to our insured. In your letter you stated that in accordance with the subcontract, Thycon Construction is to indemnify and hold Caddell and your insurer harmless in this matter.

Thycon Construction is insured with Colony Insurance Company under policy number GL 3201789 with effective dates 8-19-05/06, through the HRH of AL Insurance Agency o Huntsville, AL. Losses are subject to the terms and conditions of forms: CG0001, ed 07/98 - the Commercial General Liability Coverage Form. Thycon carries $1,000,000.00 per occurrence / $2 million aggregate limits for covered bodily injuries claims of others resulting from the negligence of Thycon Construction.

With respect to the claim for indemnity, I believe the language of the indemnity agreement is ambiguous, or otherwise unenforceable as it states that Thycon is responsible to indemnify and defend Caddell only if the claim or loss is caused in whole or in part by any negligent act or omission of Thycon or it's employees.

This claim is related to injuries sustained by an employee of Thycon while in the course and scope of his employment with them. I cannot identify either in the allegations of the complaint or in my investigation, any negligent act(s) of Thycon or it's employees.

In addition we have verified that Caddell Construction was never requested to be added as an additional insured under above referenced policy.

Based on this and absent any findings by a jury to the contrary, we will not at this time be able to commit to providing indemnification to Caddell Construction. Please understand that at this time we are neither accepting, or denying possible indemnification of your company under the policy. However we will continue to provide a defense to your company via David Wilson, with whom your attorney has been dealing with since I sent my 2-21-06 e-mail to your attention. Mr. Wilson may be contacted at (205) 252-4441.

MONTE MCKINNEY
Claim No.: 129431KSG
September 1, 2006
Page 2

This provided defense however, is with the understanding that it is without waiver as to the
disposition of the case at issue. If a jury decides there is no negligence against Thycon or
it's employees we shall seek reimbursement for all costs, fees and expenses we incur
directly from Caddell Construction.

If you disagree with our position and/or can provide additional information that may have
a bearing on this issue, please inform us immediately and we will reconsider our position.

This will advise you that no action heretofore or hereafter taken by us on your behalf shall
constitute an admission of liability or an admission of coverage under the policy, nor is it a
waiver of any right to disclaim coverage under the policy. We also state that by referring
to the above, the company does not waive any of the other policy provisions or its right to
assert further coverage defenses that may arise. In summary, Colony Insurance is
undertaking this defense under a full reservation of rights.

Should you have any questions regarding coverage issues or anything in this letter which
you disagree, please either write or call me at 1-800-456-8458, Ext. 7346.

Sincerely,

COLONY INSURANCE COMPANY


Karl Goeken
Sr. Claims Examiner, Ext. 7346
KSG/ssm/ksg0902


cc:    MR MONTE MCKINNEY      (sent regular mail)
       SENIOR VICE PRESIDENT OPERATIONS
       CADDELL CONSTRUCTION CO INC
       PO BOX 210099
       MONTGOMERY AL 36121

       MR TIM CONNOR
       THYCON CONSTRUCTION
       PO BOX 2131
       HUNTSVILLE AL 35804

       A JOE PEDDY
       SMITH, SPIRES & PEDDY
       2015 SECOND AVENUE NORTH SUITE 200
       BIRMINGHAM AL 35203



2. Article Number

7160 3901 9849 4714 5127

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery
Tim Pleasan

C. Signature
X   Ti Plei

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type   CERTIFIED MAIL

4. Restricted Delivery? (Extra Fee)   ☐ Yes

1. Article Addressed to:

MR MONTE MCKINNEY
SENIOR VICE PRESIDENT OPERATIONS
CADDELL CONSTRUCTION CO INC
PO BOX 210099
MONTGOMERY AL 36121

Reference Information

129431KSG

KARL GOEKEN

PS Form 3811, January 2005          Domestic Return Receipt

---

7160 3901 9849 4714 5127

TO:   MR MONTE MCKINNEY
      SENIOR VICE PRESIDENT OPERATIONS
      CADDELL CONSTRUCTION CO INC
      PO BOX 210099
      MONTGOMERY AL 36121

SENDER:    KARL GOEKEN

REFERENCE: 129431KSG

PS Form 3800, January 2005

| RETURN RECEIPT SERVICE | Postage | 0.00 |
|---|---|---|
| | Certified Fee | 0.00 |
| | Return Receipt Fee | 0.00 |
| | Restricted Delivery | 0.00 |
| | Total Postage & Fees | |

US Postal Service
**Receipt for Certified Mail**
No Insurance Coverage Provided
Do Not Use for International Mail

POSTMARK OR DATE
FINANCE STA
SEP 1 2006
USPS